UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIMOTHY M. BETLEWICZ | ) |
| Plaintiff, | ) |
| | ) |
| -against- | ) |
| | ) CIV NO.:_____ |
| | ) |
| THE DIVISION OF NEW YORK | ) |
| STATE POLICE, FORMER ACTING | ) |
| SUPERINTENDENT JOHN P. | ) |
| MELVILLE, in his Official and | ) |
| Personal Capacities, and | ) |
| SUPERINTENDENT JOSEPH | ) |
| D'AMICO in his Official and | ) |
| Personal Capacities | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT WITH
JURY DEMAND**

**12 CV 0179**

**JUDGE SEIBEL**

Plaintiff, by his attorney, Martin W. Schwartz, complaining of the Defendants, respectfully alleges as follows:

## NATURE OF THE ACTION

1) This is a civil action for declaratory relief, injunctive relief, back pay, front pay, accrued benefits and damages, wherein the Plaintiff seeks full payment of all monies, perks, benefits and emoluments to which he is entitled under the Constitution and Laws of the United States and the State of New York, because of his employment as a New York State Police trooper with the Defendant Division of

State Police, and because of his line of duty disability and because of his retirement from that position on August 9, 2011, on an Accidental (line-of-duty) Disability Retirement Pension granted him by the New York State Police and Fire Retirement System, and because of his said permanent disability incurred at work and established by the N.Y.S. Workers Compensation Board and the N.Y.S. Police and Fire Retirement System. These payments, benefits and emoluments were intentionally and wrongfully not made to Plaintiff, in derogation of his aforesaid federal constitutional and statutory rights. Additionally, Plaintiff seeks damages and injunctive relief against the Defendants Melville and D'Amico in their personal and official capacities for, acting under color of law, intentionally, maliciously and wrongfully withholding the aforesaid disability compensation, *etc.*, from the Plaintiff, *and for* engaging in an unlawful and ongoing vendetta against the Plaintiff, improperly using the resources of the New York State Police to maintain a meritless and illegal criminal and internal investigation of the Plaintiff, and also including but not limited to misusing the resources of the Cayuga County, New York, District Attorney and the County Court of the County of Cayuga by their alleging, on information and belief, that Plaintiff made a false claim of permanent injury incurred in the line of duty. This investigation has continued after the Plaintiff's injuries were established by the New York State Workers' Compensation Board after trial, and affirmed on appeal, as occurring in the line of duty and being permanent, and after same were also established as occurring in the line of duty by the Accident Board of the New York State Police and Fire Retirement System, and permanently disabling by the Medical Board and independent medical examiner of the said Retirement System, resulting in Plaintiff being granted the aforesaid line of duty Accidental Disability Retirement

Pension equal to three-quarters of his final average salary by the New York State Comptroller who superintends the Police and Fire Retirement System.

## JURISDICTION

2) Plaintiff maintains this action for violations of his rights, privileges and immunities under the Equal Protection (against gender discrimination) and Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution, Title 42 United States Code §1983, for discrimination against him in compensation under Title 29 United States Code §§206(d), 215 and 216 (Equal Pay Act), and such other provisions of the Constitution and laws of the United States as may be hereto applicable, including but not limited to Title 42 Unites States Code §1988 with respect to attorneys fees in civil rights actions.

3) The original jurisdiction of this Honorable Court is invoked pursuant to Title 28 United States Code, §§1331, 1343(a)(3) and 1343(a)(4).

## VENUE

4) All Individual Defendants are residents of the State of New York.

5) The Division of New York State Police is a state-wide law enforcement agency with offices in the Southern District of New York, including the City of White Plains.

6) All of the Plaintiff's federal claims herein, arose within the State of New York. At the time of the accrual of the claims, Plaintiff was assigned to Troop T, which has patrol and investigative operations and jurisdiction in the Southern District of New York, but outside of the five counties comprising New York City,

7) Accordingly, venue is proper in the Southern District of New York pursuant to Title 28 United States Code, §§1391(b) and 1391(c), and this case should be assigned to the White Plains, New York Courthouse.

## PARTIES

8) Plaintiff was, for twelve and one half years until May 6, 2010, employed as a full-time sworn trooper with the Defendant New York State Police. On January 10, 2011, he was critically injured in the line of duty while on uniformed patrol on the New York State Thruway in Brutus, New York (Milepost 301.2), and airlifted to a hospital where he subsequently had major surgery for a life-threatening injury to his cervical spine.

9) On May 6, 2010, while out on disability and unpaid, Plaintiff was terminated from the State Police by action of the Defendant Melville, for alleged violations of the Rules and Regulations of the State Police, primarily as the result of an alleged scientific test that showed the presence of *Cannabis sativa* in a hair sample.

10) On August 9, 2011, the Plaintiff was granted an Accidental Disability Retirement from the Defendant State Police by the New York State Comptroller, on account of his line of duty injury on January 10, 2011.

11) On August 26, 2011, the Defendant State Police changed the Plaintiff's status from "Dismissed' to "Disability Retirement" (Complaint Exhibit #1).

12) Plaintiff was a resident of the State of New York from at least the date of his line of duty injury on January 10, 2010, until on or about November 1, 2010 when he moved to and became a legal resident of the State of Florida.

- 4 -

1    13) From January 10, 2010, until on or about January 1, 2011, the
2  Defendant Melville was the Acting Superintendent of the Defendant New York
3  State Police.

4    14) From on or about January 1, 2011 to date, the Defendant D'Amico was
5  and is the Superintendent of the Defendant New York State Police by
6  gubernatorial appointment and confirmation by the New York State Senate.

## BACKGROUND

10    15) Plaintiff was injured on January 10, 2010, at approximately 6:30 P.M.,
11  on the New York State Thruway near Milepost 301.2 (Brutus, N.Y.) while on duty,
12  in uniform and performing patrol in a marked New York State Police car. He was
13  struck by an unknown object, presumably a loose (trailer) spare tire from a
14  passing vehicle, as one of these was recovered near the accident scene.

15    16) Plaintiff was knocked unconscious to the ground from the impact, and
16  was found by a passing motorist, who called for assistance. Plaintiff was
17  subsequently airlifted to the Upstate University Medical Center where he was
18  admitted to the Intensive Care Unit.

19    17) Plaintiff was subsequently released from the hospital, and returned
20  there on February 9, 2010, for major cervical decompression surgery to prevent
21  further damage including paralysis, which surgery included implantation of
22  hardware to stabilize the spinal column.

23    18) Plaintiff was paid his full salary through January 13, 2010. On January
24  14, 2010, based upon the aforesaid hair sample positive test for *Cannabis,* he was
25  suspended from the State Police without any pay. These test results were **not**
26  **received** by the State Police until January 14, 2010. Plaintiff denied the use of

- 5 -

*Cannabis* and indicated that it might have been in his system as the result of his having been exposed to the substance in the course of his duties, but such explanation was summarily rejected by the Defendant State Police and the Defendant Melville, then Acting Superintendent.

19) On May 6, 2010, still unpaid, the Plaintiff was terminated from the State Police.

20) Sometime after January 14, 2010, the Internal Affairs Bureau of the State Police commenced an exhaustive investigation in an endeavor to prove that the Plaintiff had fabricated his accident. His treating doctors were interviewed repeatedly and medical records obtained **without** the written permission of the Plaintiff, as required by both state law and HIPPA mandates, rules and regulations. Subsequently his treating surgeon, Dr. William Lavelle, complained of being harassed for information by Defendant State Police Internal Affairs investigators. Dr. Lavelle informed them repeatedly that this accident almost killed the Plaintiff and that it was not fabricated.

21) On April 8, 2010, after a lengthy trial, Administrative Law Judge Martin E. Donnelly-Heg of the New York State Worker's Compensation Board, rendered a final decision determining that the Plaintiff had been injured in a genuine line of duty accident and made awards. During that trial the primary case investigator for the Defendant State Police testified under oath that their investigation had **not** been able to establish that the Plaintiff had fabricated his injury.

22) Notwithstanding this, the Defendant State Police pressured the State Insurance Fund (it's workers' compensation insurance carrier) to appeal Judge Donnelly-Heg's decision. In that appeal it was again argued that the accident was fabricated by the Plaintiff who feared a positive drug test. The Appeals Panel

- 6 -

rejected this argument indicating that the test results were not known until days after the Plaintiff was injured. On October 4, 2010, this Three-Judge Panel unanimously affirmed Judge Donnelly-Heg's decision, and the carrier declined to appeal the case to the Appellate Division of the New York State Supreme Court.

23) Notwithstanding these decisions and in violation of their own regulations, the Defendant State Police continued to refuse to pay wages to the Plaintiff. In the Administrative Manual of the Defendant State Police, Regulation 5.12 grants full-pay leave to sworn members thereof upon their being injured in the line of duty and unable to work.

24) Upon information and belief such disability pay is routinely granted to all sworn members of the state police. Plaintiff has been informed that at least one female trooper performing the same patrol and related duties as the Plaintiff and now disability-retired, named Jeanette M. Dockstader-Spare, formerly assigned to the Auburn Station of the Defendant State Police, was injured in the line of duty, granted the full pay provided for by Regulation 5.12, aforesaid, and subsequently retired on a State Police Disability Pension. Plaintiff has also been informed that other similarly situated female troopers performing duties akin to his, and injured in the line of duty, were also granted Regulation 5.12 disability pay, and that, on information and belief, no female troopers injured in the line of duty were refused such disability pay. Plaintiff alleges this patent discrimination violates the federal Equal Pay Act, and violates his right to equal protection against gender discrimination in pay, under the Fifth and Fourteenth Amendments of the U.S. Constitution.

25) On September 20, 2010, the Plaintiff appeared *pro se* at a Discrimination Hearing before the New York State Workers' Compensation Board. He asked for an adjournment to obtain counsel. The Defendant State Police sent

1  one of their assistant division counsels, Kevin Bruen, Esq., to appear on their
2  behalf. In opposition to the Plaintiff's request for an adjournment, Mr. Bruen
3  alleged that there was an ongoing criminal investigation of the Plaintiff. Judge
4  Donnelly-Heg rejected the comment as irrelevant. A copy of the official minutes of
5  this hearing is attached as Complaint Exhibit #2.

6  26) On August 9, 2011, after an exhaustive process, the New York State
7  Comptroller, acting in his capacity as head of the State Retirement System,
8  granted the Plaintiff an Accidental Disability Retirement Pension, finding that the
9  aforesaid injury to him on January 10, 2010, occurred in the line of duty and
10  permanently incapacitated him from performing the duties of a state trooper.

11  27) Notwithstanding these various determinations of genuine injury, where
12  in each of them the Defendant State Police was given numerous opportunities to
13  prove its claim of a fabricated accident, but failed to do so, they have continued to
14  pursue unconstitutional and unlawful investigations of the Plaintiff. Both the
15  Defendant Melville and the Defendant D'Amico have been asked in writing by
16  Plaintiff's Counsel herein to cease and desist from this harassment of the Plaintiff
17  and misuse of the powers of the Defendant State Police. Upon information and
18  belief, including Plaintiff's obtaining copies of Cayuga County Court subpoenas,
19  one of which we aver was illegally issued, served upon the Federal Records Center
20  to obtain military medical records of the Plaintiff, this investigation has continued
21  to the present day without legal purpose, with the knowledge and assent of these
22  two individual defendants.

23  28) Said ongoing investigation we aver is an abuse of the powers of the
24  Defendant State Police, violative of the Constitution and laws of the United States
25  and inconsistent with the norms of an American Society that is governed by a

26

Constitution and laws, inter alia, constraining the police powers of the state, and punishing abuses thereof.

## FIRST CAUSE OF ACTION
## EQUAL PAY ACT

29) Plaintiff repeats and realleges paragraphs 1 through 28, *supra*, as if more fully set forth herein.

30) Plaintiff's rights against gender discrimination under the Equal Pay Act, specifically, 29 U.S.C. §206(d) have been unlawfully denied him by the actions of the Defendants.

31) Upon information and belief, the official personnel and payroll records of the Defendant Sate Police (kept by Defendants from view or copying by the Plaintiff) indicate that one or more female New York state troopers who were out on disability leave were paid Regulation 5.12 full salary, including health insurance premiums and benefits to which they had entitlement during that time. Said benefits were demanded in writing, by the Plaintiff to the Defendants numerous times. Those benefits were and continue to be denied to the Plaintiff at the direction of the Defendants. Whereupon said actions and inactions of the Defendants have, in fact, violated Plaintiff's rights under the provisions of the Constitution and laws of the United States as delineated in this paragraph. Title 29 U.S.C. § 206(d) provides in relevant part that, "No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such

establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions...".

32) Under 29 C.F.R. §1620.10, as applicable to this civil action, the definition of "wages" include "fringe benefits." Under 29 C.F.R. §1620.11(a). "Fringe Benefits," in turn, is defined to include health insurance benefits, retirement benefits, accumulated leave; and other such concepts. It is alleged that these benefits, are due and owing the Plaintiff and wrongfully not paid to him on account of his gender.

33) Plaintiff alleges that the Defendants have engaged in such unlawfully discriminatory conduct against him in the within matter. Plaintiff further alleges specifically that the Defendants Melville and D'Amico have consistently, repeatedly and beyond their authority, intentionally, maliciously and wrongfully failed to take the necessary steps within their powers to provide the Plaintiff the equal pay mandated by 29 U.S.C. §206(d) on account of Plaintiff's gender, in violation of his rights under the provisions of the Constitution and laws of the United States as stated in this paragraph and paragraph 31, *supra.*

## SECOND CAUSE OF ACTION
## DUE PROCESS OF LAW

34) Plaintiff repeats and realleges paragraphs 1 through 33, *supra*, as if more fully set forth herein.

35) Plaintiff has a constitutionally protected property interest in the monies, benefits, perks and emoluments arising from his employment, as such property rights are created by the N.Y.S. Executive Law and the rules and

- 10 -

regulations of the Defendant New York State Police. The Plaintiff may not be deprived of such protected property interests under color of law without being afforded due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983. Said benefits were demanded in writing, by the Plaintiff to the Defendants herein at various times before and after Plaintiff was granted N.Y.S. Accidental Disability Retirement. The Defendants herein have failed to afford the Plaintiff any such due process in the adjudication of his claims and specifically the Defendants Melville and D'Amico have, acting under color of law, consistently, repeatedly and beyond their authority as, respectively, Acting Superintendent and Superintendent of the Defendant State Police, intentionally, maliciously and wrongfully failed to take the necessary steps within their powers to provide the Plaintiff any measure of due process, by summarily ignoring all his claims, implying and accusing him of criminal fraud, and continuing an unlawful and unconstitutional criminal investigation which is and was within their powers to terminate, especially after independent findings by two other state agencies affirmed the *bona fides* of Plaintiff's line of duty injury. Whereupon said actions, inactions and misconducts of the Defendants Melville and D'Amico have, in fact, violated Plaintiff's rights under the provisions of the Constitution and laws of the United States as delineated in this paragraph.

## THIRD CAUSE OF ACTION
## EQUAL PROTECTION OF THE LAWS

36) Plaintiff repeats and realleges paragraphs 1 through 35, *supra*, as if more fully set forth herein.

- 11 -

37) Plaintiff has been unlawfully deprived by the Defendants of his constitutional and statutory rights to be free from discrimination based upon his gender with respect to his positions as a New York state trooper and a retired trooper and the benefits to which he is entitled thereunder    The Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983 forbid the denial to Plaintiff of the equal protection of the laws based upon gender.

38) Upon information and belief, the official personnel and payroll records of the Defendant State Police (kept by the Defendants from view or copying by the Plaintiff) indicate that one or more female New York state troopers, including the one named aforesaid in this complaint, who were out on State Police disability leave were paid the wages and fringe benefits, including health insurance premiums, to which they had entitlement during that time.  Said benefits were demanded in writing by the Plaintiff, of the Defendants, numerous times before and after his retirement on accidental disability.    Those benefits were and continue to be denied to the Plaintiff at the directions of the Defendants Melville and D'Amico who have, during their respective tenures as heads of the Defendant State Police, acting under color of law, consistently, repeatedly and beyond their authority, intentionally, maliciously and wrongfully failed to take the necessary steps within their powers to provide the Plaintiff with the same compensation as it is believed they gave to one or more female New York State troopers similarly situated to the Plaintiff, by ignoring all his claims and accusing him of criminal fraud and continuing an unlawful and unconstitutional criminal investigation which is and was within their powers to terminate, especially after independent findings by two other state agencies affirmed the *bona fides* of Plaintiff's line of duty injury.  Whereupon said actions and inactions of the Defendants have, in fact,

violated Plaintiff's rights under the provisions of the Constitution and laws of the United States as delineated in this paragraph.

## **PRAYER FOR RELIEF**

39) **WHEREFORE,** Plaintiff respectfully prays for the following relief in favor of the Plaintiff against all Defendants, from this Honorable Court:

a) A Declaratory Judgment that the Defendants have individually and jointly under color of law, violated the Plaintiff's federal and state constitutional rights to due process and the equal protection of the laws against gender discrimination with respect to wages and benefits as defined in the Code of Federal Regulations.

b) A Declaratory Judgment that the defendants have individually and jointly violated the Plaintiff's rights under § 206(d) of Title 29, United States Code, the Equal Pay Act, by engaging in gender discrimination against him with respect to wages as defined in the Code of Federal Regulations.

c) Injunctive relief against all Defendants requiring them to permanently terminate, and cease and desist from continuing their criminal, internal or other investigations of the Plaintiff with regard to the line of duty accident of January 10, 2010, and his permanent disabilities therefrom, and to turn over to Plaintiff a complete copy of any and all documents, recordings, photographs, printed or digital, and exhibits amassed or prepared, whether written, printed, audio, visual, or in any electronic or digitized format whatsoever, and whether or not supplied to any prosecutor or judge in the State of New York, in and from these investigations or any arising out of them, and a list of the names, ranks and addresses, home and

- 13 -

1  business, of every employee of the Defendant New York State Police, who is or was
2  involved in these investigations.

3  d) An award of back pay, front pay and accrued benefits against the
4  Defendant New York State Police, in favor of the Plaintiff, together with an award
5  of compensatory damages against the Defendant New York State Police in favor
6  of the Plaintiff, in the sum of One Million Dollars ($1,000,000), for violation of his
7  rights under the Equal Pay Act, aforesaid, Due Process and Equal Protection
8  Clauses the Fifth and Fourteenth Amendments of the United States Constitution,
9  and §1983 of Title 42, United States Code.

10  e) An award of compensatory damages of against the Defendant Melville, in
11  favor of the Plaintiff in the sum of One Million Dollars ($1,000,000) for violation of
12  his rights under the Due Process and Equal Protection Clauses of the Fifth and
13  Fourteenth Amendments to the U.S. Constitution, and the Equal Pay Act.

14  f) An award of compensatory damages of against the Defendant D'Amico, in
15  favor of the Plaintiff in the sum of One Million Dollars ($1,000,000) for violation of
16  his rights under the Due Process and Equal Protection Clauses of the Fifth and
17  Fourteenth Amendments to the U.S. Constitution, and the Equal Pay Act.

18  g) An award of punitive damages against the Defendant Melville in favor of
19  the Plaintiff, for his intentional misconduct while acting under color of law as
20  afore-described in this complaint, in the sum of Two Hundred and Fifty Thousand
21  Dollars ($250,000).

22  h) An award of punitive damages against the Defendant D'Amico in favor of
23  the Plaintiff, for his intentional misconduct while acting under color of law as
24  afore-described in this complaint, in the sum of Two Hundred and Fifty Thousand
25  Dollars($250,000).

26

i) An award of pre-judgment and post-judgment interest as to all causes of action against all Defendants.

j) An award of reasonable attorney's fees, pursuant to 42 U.S.C. § 1988 and the prevailing plaintiff attorney fee statutes and provisions delineated in the Equal Pay Act in favor of the Plaintiff, against all Defendants.

k) An award of the costs, disbursements and expenses of this action against all Defendants.

l) Such other and further legal and equitable relief as to this Honorable Court may seem just and proper.

## **JURY DEMAND**

40) Plaintiff respectfully demands a trial by jury, pursuant to Rule 38 of the Federal Rules of Civil Procedure, as to all issues or questions of fact that are raised by the complaint or any subsequent pleadings, pursuant to the Constitution and laws of the United States.

Dated: Nanuet, New York
   January 10, 2012

Respectfully submitted,

MARTIN W. SCHWARTZ
Attorney for the Plaintiff
Bar No.: MS 9806
119 Rockland Center
Suite 134
Nanuet, NY 10954-2956
(845) 356-3644
swohtz@optonline.net

# COMPLAINT EXHIBIT #1

# NEW YORK STATE POLICE

## MEMORANDUM

Troop__Station___**Headquarters**_____

Date _____ **August 26, 2011** _____

**To:**       **Ms. Victoria Santulli, Payroll Clerk V**

**From:**    **Major Bryon D. Christman, Director of Human Resources**

**Subject:**   **PAYROLL TRANSACTION**
**\*Approved Disability Retirement - Previously "Dismissed"**

NAME:    **BETLEWICZ, TIMOTHY M.**     TROOP:    T311

TITLE:    Trooper       SOCIAL SECURITY:    XXX-XX-XXXX

\*Disability Retirement

BOB:  05/07/10    thru      BOB:      NYSTEP:

ADJ. EOD:        ADJ. PL EOD:

ANNUAL LEAVE PAYMENT:    **\*3 days, 6 hrs** - If approved for payment
                                                    (Prev.- No Payment per Counsel's Office)

SICK LEAVE:   **\* 3 days**  (Prev. Nothing Reported)

PASS DAYS:   4/29, 5/3, 5/4, 5/7, 5/8, 5/9, 5/12  (12 hour)

# COMPLAINT EXHIBIT #2

1                                          MINUTES

2                    WORKERS' COMPENSATION BOARD

3                         STATE OF NEW YORK

4                  Hearing Point:  Syracuse, New York

5                  Date of Hearing:  September 20, 2010

6
     Timothy Betlewicz            Claimant
7
     New York State Police        Discrimination Case No.
8                                 120502582

9

10

11

12       HEARING BEFORE THE WORKERS' COMPENSATION BOARD

13       PRESENT:   Martin Donnelly-Heg, WCL JUDGE

14

15                                    Merrilee DeVaul

16                                    Verbatim Reporter

17   APPEARANCES:

18   Claimant present
     Kevin Bruen, attorney for the employer and carrier
19

20
     WITNESS                                          PAGE
21

22

23

24

```
1   CASE DULY CALLED AT 1:24.

2              THE JUDGE:    We're on the record.  This is

3        the claim of Timothy Betlewicz.  The claimant is

4        present.  And Mr. Kevin Bruen is here on behalf of the

5        employer.  This is a discrimination claim which was

6        filed pursuant to a form DC-130 alleging

7        discrimination pursuant to Workers' Compensation Law

8        Section 120.  Mr. Betlewicz, you are not currently

9        represented by an attorney, is that correct?

10             THE CLAIMANT:    No, sir.

11             THE JUDGE:    And are you requesting an

12       adjournment in order to obtain one?

13             THE CLAIMANT:    Yes.

14             MR. BRUEN:    We received a letter

15       correspondence from an attorney claiming to represent

16       Mr. Betlewicz in all matters and directing us to have

17       no contact with him or talk to him in any way.

18             THE JUDGE:    Do you have that letter?

19             MR. BRUEN:    I don't have it with me, but I

20       could fax it to the court.

21             THE JUDGE:    The file I have, and it's a

22       paper file, we have paper files for discrimination

23       claims, does not contain a notice of retainer with

24       respect to discrimination, to this discrimination
```

claim.

1

2          MR. BRUEN:    Right.

3          THE JUDGE:    Mr. Betlewicz does have an

4    attorney with respect to his workers' compensation

5    claim, however, that pertains solely to his workers'

6    compensation claim.

7          MR. BRUEN:    Right.

8          THE JUDGE:    This is an entirely separate

9    proceeding, as you are aware.

10          MR. BRUEN:    Right.

11          THE JUDGE:    His attorney would have to file

12    a separate notice of retainer.

13          MR. BRUEN:    Right.  I'm letting the court in

14    on a letter we received directed to the

15    superintendent.

16          THE JUDGE:    Okay.

17          MR. BRUEN:    Purporting to represent him in

18    any and all matters relating to us.

19          THE JUDGE:    Okay.

20          MR. BRUEN:    Now, that was mainly directed to

21    the fact there's an ongoing criminal investigation

22    into Mr. Betlewicz by members of the New York State

23    Police.  It was purporting to threaten us that we

24    shouldn't do anything of the kind or take any kind --

| | |
|---|---|
| 1 | this was a letter purportedly representing everybody, |
| 2 | and I'll send it to you if you let me have your fax. |
| 3 | If the court doesn't think it needs it, I won't do it. |
| 4 | THE JUDGE: If it says what you say it says, |
| 5 | and I have no reason not to believe it, it really |
| 6 | still wouldn't be relevant. The attorney would need |
| 7 | to file a notice of retainer in this file in order to |
| 8 | represent the claimant in this matter. So, that would |
| 9 | not be sufficient. |
| 10 | MR. BRUEN: All right. |
| 11 | THE JUDGE: Okay. You can certainly submit |
| 12 | it to the board for what it's worth. I'm not sure |
| 13 | what the purpose of it would be. |
| 14 | MR. BRUEN: If it's not going to assist in |
| 15 | scheduling the matter, I won't do it. |
| 16 | THE JUDGE: We're simply going to adjourn |
| 17 | it. And once you obtain counsel, Mr. Betlewicz, have |
| 18 | your counsel notify the board and he can request a |
| 19 | hearing and we'll set it down for another hearing. |
| 20 | But, at this point, I'm not going to direct any |
| 21 | further action. I'm going to close the case pending |
| 22 | an application to reopen on your part. |
| 23 | THE CLAIMANT: Yes, sir. |
| 24 | THE JUDGE: So, the burden is on you to |

1      reopen it.

2                THE CLAIMANT:       Thank you.

3                THE JUDGE:     Case is closed at this point.

4      Thank you.

5                MR. BRUEN:      Thanks, Judge.

6      WHEREUPON CASE WAS ADJOURNED AT 1:27.

7

8                     C E R T I F I C A T I O N

9

10                                 Date: October 7, 2010

11

12

13         Certified to be a true and accurate transcript of the
       above proceedings.
14

15         _____
                        Merrilee DeVaul
16                      Verbatim Reporter

17

18

19

20

21

22

23

24